## McNeill's Heirs, et al. v. Thompson.

(Decided November 27, 1917.)

### Appeal from Laurel Circuit Court.

1. Estoppel—Persons Estopped.—One may not rely upon an estoppel growing out of conditions which he created over the objections and against the consent of the one sought to be estopped.

2. Contracts—Title to Property—Consideration.—The settlement of adverse claims asserted against one's title to property is a sufficient consideration to support a contract with reference to the property.

3. Contracts—Release—Consideration.—Where one is claiming property under a decretal sale, and another is claiming part of it by independent title, and all of it under sales made under executions issued on the decretal sale bonds, a contract whereby each party agrees to release a portion of the property to the other is sufficiently supported by a consideration to enable the courts to enforce it, and the proof is sufficient to establish that a written contract was entered into to that effect.

H. C. CLAY for appellants.

GEORGE G. BROCK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The facts out of which this litigation grew are substantially these: Prior to December 17, 1892, a corporation known as the Nickle Plate Coal Company was operating a coal mine at East Bernstadt, in Laurel county, owning in addition to its mines a considerable amount of real property, consisting of dwellings, some business houses, a hotel and tenement houses. It became hopelessly involved, and on the day mentioned there was a suit filed in the Laurel circuit court, the style of which is Thompson v. Brownlie, &c., the purpose of which was to have a receiver appointed for the corporation to sell its property and wind up its affairs, distributing its assets among those who would be entitled thereto.

In due course judgment for the sale of all of the property of the corporation was rendered, and on August 14, 1893, it was sold under a decree of the court rendered in that case, and Jonathan McNeill became the purchaser at the price of $1,800.00, for which he executed his two bonds of $900.00 each. For some cause not appearing in the record, no order confirming that sale was made until 1897, when the court entered a *nunc pro tunc* order con-

firming it as of date when the report was made. Follow-
ing that, and on June 3, 1897, on motion of McNeill, the
purchaser, the *nunc pro tunc* order of confirmation was
set aside, and he at the same time filed a pleading in the
cause, the substance of which was exceptions to the sale,
which were afterward tried and a judgment entered set-
ting the sale aside. From that judgment the receiver
prosecuted an appeal to this court, and in an opinion
rendered in the case of Thompson v. Brownlie, &c., 25 Ky.
Law Reporter 622, the judgment was reversed and the
cause remanded.

Upon the return of the case McNeill amended his
exceptions and again litigated the question of the con-
firmation of the sale, resulting in a judgment confirming
it; from that judgment he prosecuted an appeal to this
court, and the judgment was affirmed on February 14,
1905, the opinion being reported in 27 Ky. Law Reporter
289, in the case of McNeill v. Thompson, &c. . Upon the
filing of the mandate which followed the last opinion of
this court, McNeill, under a writ of possession, issued
by the trial court, was placed in possession of the prop-
erty.

During this protracted litigation, and after the *nunc
pro tunc* order confirming the sale, an execution issued
upon one of the sale bonds against McNeill and his sure-
ties which was levied upon part of the property sold by
the commissioner in the receivership proceedings, and
the execution with the levy was returned to the clerk's
office. Directly after this a *venditioni exponas* was issued
and placed in the hands of the sheriff, and under it he
sold the property in the regular way at public outcry
to the highest bidder at the court house door, when plain-
tiff and appellee herein became the purchaser of all of
the property involved in this suit.

After the sale, it not having realized enough to sat-
isfy the bond, another execution was issued and levied
upon the equity of redemption in the property sold under
the first one, and also upon additional property pur-
chased at the decretal sale and not levied upon under
the first execution. After due and proper advertisement
the sheriff sold under the second execution, at which
plaintiff again became the purchaser.

These execution sales were duly reported, but no deed
was made to the plaintiff, although she had satisfied her
bids, until 1904, when the then sheriff, with the ex-sheriff
who had made the sales, joined in a deed to her to the

· property. After she was ousted of possession, under the writ of possession granted to McNeill, which she appears to have taken under her execution sales, and before she obtained a deed, she filed this suit to recover certain described real estate in the town of East Bernstadt, being a part of that which she had bought at one or the other of the execution sales, and asked that she be placed in possession thereof, and that defendant, McNeill, be required to execute a conveyance to her for the property which she seeks to recover, and to recover rents from defendant during the time that she was out of possession of the property.

She claimed the right to this relief (1) through her purchases under the executions, and (2) that one of the pieces of property sought to be recovered by her, known as the Thompson residence, was her property which she had acquired by purchase in 1888, and had never been owned by the Nickle Plate Coal Company, and that she had occupied it, claiming it adversely as her own for more than fifteen years before she was ousted of possession, and that as to it she had both a paper and a prescriptive title. (3) That in 1895, after she had made the purchase under the second execution sale, there had been a written agreement entered into between herself and McNeill whereby she released to him certain described property formerly owned by the Nickle Plate Coal Company, and upon which she had a claim under her execution purchases, and he released to her the property which she herein seeks to recover, and that he agreed to execute a conveyance to her of the property which he so released, they both claiming the entire property; she under the execution sales and he under the decretal sale.

The answer consisted of a denial and attempted to plead in another paragraph a *res adjudicata* estoppel. This estoppel was alleged to have arisen from the fact that plaintiff, after this court's opinion in the case of McNeill v. Thompson, &c., *supra,* and on October 17, 1905, offered her intervening pleading in the receivership suit of Thompson v. Brownlie, in which it is alleged that she attempted to assert the same claims that she is now asserting in this suit, and asked for the same relief, which pleading the court rejected and disallowed, from which the present plaintiff prayed an appeal, but which was never prosecuted. Still another paragraph was made a counter-claim against plaintiff, in which the defendant set up the fact of purchase of his property

at the decretal sale, and alleged that plaintiff's claim to the property constituted a cloud upon his title and he asked that it be removed, that her claim be cancelled, and that he recover from her $2,000.00, the reasonable rental value of the property during the time that plaintiff had possession of it.

Appropriate pleadings put in issue the allegations of the answer, and on July 16, 1916, more than ten years after the filing of the suit, a judgment was rendered sustaining the prayer of plaintiff's petition, adjudging that she was entitled to a deed of conveyance covering the property described in her petition, and directing that the court's commissioner prepare and execute the deed, inasmuch as the defendant, McNeill, had died in the meantime and the suit had been revived as against both his real and personal representatives. The judgment further dismissed the defendant's counter-claim, and to reverse that judgment this appeal is prosecuted.

Considerable discussion is indulged in by counsel for both sides of the various questions growing out of the execution sales, and of matters arising from McNeill's purchase under the decretal sale, and the various orders and judgments of the court in the receivership suit, but we find it necessary to direct our attention to but two of the questions presented on this appeal, they being (1) whether the contract which plaintiff asserts was actually entered into and if so in an enforcible form, and (2) whether the estoppel pleaded by defendant growing out of the matters alleged is sufficient for that purpose.

Considering these in the reverse order mentioned, the record does not contain the pleading which plaintiff is alleged to have offered in the receivership suit. Nothing pertaining to that matter is brought before us except an order of the court in that case, reading: "This day came Sallie J. Thompson, by attorney, and presented to the court her petition to be made a party hereto, and moved the court to have same filed herein; that she be made a party hereto and that said petition be made a cross-petition against Jonathan McNeill, to which motion said Jonathan McNeill objected. The motion came on and was heard, and the court being advised overruled said motion and refused to allow said Sallie J. Thompson to be made a party herein, to which ruling said Sallie J. Thompson excepted and prayed and was granted an appeal to the Court of Appeals."

It is plain from this that we are wholly in the dark as to what matters the petitioner therein and plaintiff

here attempted to litigate by her offered pleading. But,. whatever they were, she was prevented from doing. so by the objections of the present defendant, McNeill, and. it does not lie with him or his heirs, the present appel- lants, to insist upon what he caused to be done (barring plaintiff from entering that suit to litigate anything) as constituting an estoppel in his favor. To so hold. would recognize the right of one seeking the benefit of an estoppel to bring about the conditions creating it over the objections of his opponent, and the law will not allow him to manufacture in this way weapons to be used. against his antagonist.

Briefly discussing the sufficiency of the alleged con- tract between plaintiff and defendant, relied upon by plaintiff, we find it abundantly established that the con- tract was entered into as found by the chancellor, and. that it was supported by a sufficient consideration. The testimony clearly shows that after plaintiff had pur- chased the property under the execution sales, both she and the defendant, McNeill, were under the impression. that she obtained title thereby, although at that time she had not received the deed from the sheriff. Whether she had the legal title or not, she held an equity in the prop- erty. She was also at that time making claim to the Thompson residence under both a record and a prescrip- tive title, and it is shown that McNeill believed that even. his equity of redemption was gone because of its sale un- der the second execution, and to compromise these mat- ters and to end further litigation the contract was agreed. upon, drawn, and signed. This is testified to positively by four witnesses, two of whom were the attorneys of the respective parties at the time. Defendant, McNeill, fur- nished the only evidence contradicting the testimony of plaintiff's witnesses on this point. It is shown that the contract, after being signed by the respective parties, was left with attorney E. K. Wilson for the purpose of having him make two typewritten copies of it, one to be furnished each party. However, he neglected to do this,. and the original contract left by agreement of parties. with him became lost or destroyed. But each of the four witnesses referred to, including the attorneys for the par- ties, testify to substantially the terms of the contract and the consideration which induced the parties to enter into it.

A compromise of *bona fide* claims and a purchase of one's peace has always been considered a sufficient con- sideration for a contract. The plaintiff in this case had

at least an equitable (if not a legal) title to the property which she had purchased under the execution sales, not including the Thompson residence, and she was asserting independent title to it. To dispense with litigation with her, and to obtain a clear title to the property which she released, the defendant signed the contract, and we think the matters which induced him to do so furnished a valid consideration. Indeed, the question of sufficient consideration is not seriously disputed by defendant's counsel, the chief contention being that no contract was entered into. Aside from the judgment of the chancellor on this issue, we have four witnesses testifying in the afirmative to only one in the negative, and under such conditions there is no way open to us but to agree with the chancellor in his conclusions upon this issue.

Wherefore, the judgment is affirmed.